**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
MICHAEL PEPIN,                                                          Civil Case No. 25-cv-277

                          Plaintiff,                             **COMPLAINT**

  -against-

                                                                   **Plaintiff Demands a**
LATERAL LINK GROUP, INC.,                                       **Trial by Jury**
MCGUIREWOODS LLP,
WELLS FARGO & COMPANY,

                          Defendants.
-------------------------------------------------------------------X

## NATURE OF CASE

1. Plaintiff MICHAEL PEPIN ("PEPIN" or "Plaintiff"), by and through his attorneys DEREK SMITH LAW GROUP, PLLC, complains pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601 et seq. ("FMLA"), Fair Labor Standards Act 28 U.S.C. § 1331 ("FLSA"), and New York City Administrative Code §8, and seeks damages to redress the injuries Plaintiff suffered as a result of being unlawfully terminated from his employment.

## JURISDICTION & VENUE

2. This action involves a question of Federal Law under the FMLA and FLSA.

3. This Court has supplemental jurisdiction over State Law causes of action.

4. Venue is proper in the Southern District of New York as Plaintiff was employed by Defendants and worked in New York County where the violations of law complained of occurred.

**PARTIES**

5. Plaintiff PEPIN was and is an individual male.

6. At all times material, Defendant LATERAL LINK GROUP, INC. ("Lateral") was and is a foreign business corporation, duly existing by the virtue and laws of the State of California, authorized to conduct business in New York.

7. At all times material, LOCUM LEGAL LLC ("Locum") is a wholly owned subsidiary of Lateral. Locum is not registered with the New York Secretary of State but is engaging in business in New York State.

8. Lateral, by and through Locum, appears to do business in New York State as an entity called Bridgeline Solutions, Inc. ("Bridgeline"). Likewise, Bridgeline is not registered with the New York Secretary of State but is engaging in business in New York State.

9. At all times material, Defendant MCGUIREWOODS LLP ("McGuireWoods") is a New York Registered Foreign Limited Liability Partnership, duly existing by the virtue and laws of the State of Virgina, authorized to conduct business in the State of New York.

10. At all times material, Defendant WELLS FARGO & COMPANY ("Wells Fargo") was and is a foreign business corporation duly existing by the virtue and laws of the State of California, authorized to conduct business in the State of New York.

11. At all times material, Lateral, by and through Locum and/or Bridgeline, placed Plaintiff at McGuireWoods to work for Wells Fargo.

12. At all times material, any payments made to Plaintiff from Locum, had to be approved by McGuireWoods and Wells Fargo.

13. At all times material, McGuireWoods set Plaintiff's schedule and oversaw his work.

14. At all times material, Wells Fargo assigned and withheld Plaintiff's job responsibilities and tasks.

15. At all times material, Defendants held the authority, both collectively and individually, to hire and terminate Plaintiff.

16. At all times material, Defendants jointly employed Plaintiff.

## MATERIAL FACTS

17. On or about June 28, 2021, Defendants hired Plaintiff as an Employment Investigator.

18. Defendants hired Plaintiff after Defendant Wells Fargo's Investigations Manager Wendy Douglas interviewed Plaintiff directly.

19. Before starting the position, McGuireWoods provided Plaintiff with Wells Fargo equipment.

20. Before starting the position, Wells Fargo "onboarded" Plaintiff within their system.

21. Before starting the position, McGuireWoods instructed Plaintiff to download their timekeeping application.

22. Upon starting the position, Defendant McGuireWoods' Attorney Robert "Bobby" Holland ("Holland") oversaw, trained, and managed Plaintiff's projects, alongside Senior Paralegal Shanna Eisenhauer Higgins ("Higgins"). The training focused exclusively on Internal Investigations Sales Practices remediation projects for Wells Fargo.

23. During the training, Defendants reduced Plaintiff's pay and did not provide Plaintiff overtime.

24. After two weeks of working, Defendant McGuireWoods' Attorney Holland transferred Plaintiff to the Employment Investigations department at Wells Fargo.

25. Once transferred, Wells Fargo's internal Employment Investigations team completely managed Plaintiff, controlling all aspects of Plaintiff's daily work.

26. At all times material, Defendant McGuireWoods' managers would only reach out to Plaintiff regarding system accessibility issues, billing narratives, and hours.

27. At all times material, Wells Fargo's management provided Plaintiff positive feedback on his work.

28. In or around January of 2024, Plaintiff's wife began suffering various complications from fertility-related treatments and procedures, as well as a significant leg injury that severely impacted her mobility.

29. As such, on or about February 23, 2024, Plaintiff emailed Defendant Locum's HR Manager Nicole Calkins ("Calkins") to discuss family medical leave.

30. On or about February 27, 2024, Plaintiff returned a completed NY Paid Family Medical Leave application ("Application") to Defendant Locum's HR Manager Calkins.

31. At all times material, employers are required to complete their portion of the Application within 3 business days. Defendants did not return the Application until after 6 business days.

32. In or around the same time, Plaintiff began coordinating with Wells Fargo to complete or reshuffle Plaintiff's work in his absence.

33. On or about March 11, 2024, the same day Defendant McGuireWoods' Senior Paralegal Higgins learned Plaintiff was taking medical leave, Higgins immediately began to question how Plaintiff's cases would be handled during his absence, began questioning the amount of hours Plaintiff has worked per week, and inquired whether he would be able to work 40 hours a week upon his return.

34. Upon information and belief, Higgins' inquiry regarding whether Plaintiff could work 40 hours a week was based off Defendants' concerns that Plaintiff would need to care for his wife and/or not be able to work.

35. At that time, Higgins did not ask other similarly situated employees if they could work 40 hours a week.

36. On or about March 18, 2024, Plaintiff began his leave.

37. On or about May 1, 2024, Plaintiff's leave ended.

38. Upon returning from leave, Defendants assigned Plaintiff only one case. This was unusual, as Defendants typically assigned Plaintiff 5 to 8 cases at a time.

39. On or about May 16, 2024, Defendant Locum's Senior Director Tina Nguyen terminated Plaintiff at the request of Defendants.

40. Defendants terminated Plaintiff in retaliation for Plaintiff taking family medical leave and for being associated with a disabled person.

41. At all times material, no other investigators assigned to Wells Fargo were terminated.

42. At all times material, no other similarly situated employees in Wells Fargo's Employment Investigations department were terminated.

*Relevant Facts Related to Overtime Claims*

43. At all times material, Defendants instructed Plaintiff to keep his hours low and try to not go above 40 hours a week.

44. Almost immediately upon working, it became clear that Plaintiff needed to work over 40 hours a week to complete the tasks Defendants assigned him.

45. In or around 2023, Plaintiff complained to Defendant McGuireWoods' Attorney Holland about the work demands and the discouragement he received from accurately reporting his hours.

46. In or around 2023 through 2024, Plaintiff lodged concerns with McGuireWoods' management.

47. At all times material, Plaintiff, and all other Investigators working through McGuireWoods, on an average week worked 10 to 20 hours of overtime.

48. At all times material, Plaintiff, and all other Investigators working through McGuireWoods, were not compensated with the appropriate overtime hours.

49. Although Plaintiff and others kept track of their billing through McGuireWoods' system, they were discouraged from submitting weekly hours above 40. In fear of being terminated, Plaintiff and others would routinely under-report hours.

50. At all times material, Plaintiff's managers at both McGuireWoods and Wells Fargo knew the McGuireWoods-based Investigators were working well beyond 40 hours and not being compensated for their overtime.

## AS A FIRST CAUSE OF ACTION
## RETALIATION UNDER FMLA

51. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

52. Plaintiff was an eligible employee under the definitional terms of the FMLA.

53. At all times material, Plaintiff was protected by the provisions of the FMLA, 29 U.S.C. 2601, et seq., and all applicable regulations thereunder.

54. At all times relevant herein, Defendants are "covered employer[s]" within the meaning of the FMLA. Defendants employ 50 or more employees, both individually and collectively, in at least 20 calendar weeks within a 75-mile radius of the office Plaintiff worked out of.

55. Plaintiff requested FMLA leave and was granted FMLA leave.

56. Defendants retaliated against Plaintiff for requesting and taking FMLA leave by terminating him.

57. Defendants' violations of the FMLA were grossly negligent and/or willful.

58. As a direct and proximate cause of Defendants' willful violations of the FMLA, Plaintiff has suffered, and continues to suffer, monetary and/or other economic harm for which he is entitled to an award of monetary damages, liquidated damages, reasonable attorneys' fees and expenses, and other relief.

**AS A SECOND CAUSE OF ACTION**
**OVERTIME VIOLATIONS UNDER the FLSA**

59. Plaintiff repeats and realleges all prior allegations set forth above.

60. Pursuant to the applicable provisions of the FLSA, Plaintiff was entitled to overtime compensation of one and one-half times his regular hourly rates of pay for all hours worked in excess of forty (40) hours per week.

61. Plaintiff regularly worked more than forty (40) hours per week during his employment with Defendant.

62. Throughout the relevant time period, Defendants knowingly failed to pay Plaintiff overtime wages of one and one-half times his regular hourly rates of pay for each hour worked in excess of forty (40) hours in a workweek.

63. As a result of Defendants' violations of the law and failure to pay Plaintiff the required overtime wages, Plaintiff has been damaged and is entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

64. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiff is entitled to liquidated damages.

**AS A THIRD CAUSE OF ACTION**
**OVERTIME VIOLATIONS UNDER NYLL**

65. Plaintiff repeats and realleges all prior allegations set forth above.

66. Pursuant to the applicable provisions of the NYLL, Plaintiff was entitled to overtime compensation of one and one-half times his regular hourly rates of pay for all hours worked in excess of forty (40) hours per week.

67. Pursuant to appliable provisions of the NYLL, Plaintiff was entitled to overtime compensation of one and one-half times his regular hourly rates of pay for all hours worked in excess of eight (8) hours of work per day.

68. Plaintiff regularly worked in excess of forty (40) hours per week and in excess of eight (8) hours a pay during his employment with Defendants.

69. Throughout the relevant time period, Defendants knowingly failed to pay wages of one and one-half times his regular hourly rates of pay for each hour worked in excess of forty (40) hours in a workweek.

70. As a result of Defendants' violations of the law and failure to pay Plaintiff the required overtime wages, Plaintiff has been damaged and is entitled to recover from Defendants all overtime wages due, along with all reasonable attorneys' fees, interest, and costs.

71. As Defendants did not have a good faith basis to believe that their failure to pay overtime wages was in compliance with the law, Plaintiff is entitled to liquidated damages.

## AS A FOURTH CAUSE OF ACTION
## ASSOCIATION DISCRIMINATION – DISABILITY
## UNDER NYCHRL

72. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint as if set forth herein more fully at length.

73. The Administrative Code of the City of New York § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

74. N.Y., Admin. Code § 8-107(20) further holds "*The provisions of this section set forth as unlawful discriminatory practices shall be construed to prohibit such discrimination against a person because of the* actual or perceived race, creed, color, national origin, *disability,* age, sexual orientation, uniformed service or immigration or citizenship status *of a person with whom such person has a known relationship or association*." (Emphasis Added).

75. Defendants engaged in an unlawful discriminatory practice and violated the section cited herein when they terminated Plaintiff because of his association with his disabled wife.

76. Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of the New York City Administrative Code Title 8.

## JURY DEMAND

Plaintiff demands a jury trial.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants jointly and severally for all available damages including but not limited to emotional distress, lost wages, punitive damages, statutory damages, attorneys' fees, costs, medical expenses, interest and all other damages as are just and proper to remedy Defendants' unlawful practices.

DATED:   New York, New York
         January 13, 2025

                          Respectfully Submitted

                          **DEREK SMITH LAW GROUP, PLLC**

                          */s/ Alexander G. Cabeceiras*
                          Alexander G. Cabeceiras, Esq.
                          1 Pennsylvania Plaza, Suite 4905
                          New York, New York 10119
                          (332) 910-5631